**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**


**RONDA CUE**                                                                                          **PLAINTIFF**


**VS.**                               **CASE NO. 1:11CV00066  HDY**


**MICHAEL J. ASTRUE, Commissioner,
     Social Security Administration**                                        **DEFENDANT**


**ORDER**

Plaintiff has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for disability insurance benefits (DIB) and supplemental security income (SSI).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  42 U.S.C. § 405(g).

This Court's review function is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *See Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions."  *Id*. The Court may not reverse merely because evidence would have supported a contrary outcome.  *See id.*

The only disputed issue in this case is whether plaintiff is disabled within the meaning of the Social Security Act.  Plaintiff bears the burden of establishing a physical or mental impairment that will result in death, or that has lasted twelve months or more and has prevented her from engaging in any substantial gainful activity.  42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 1382c(3)(A) and (B).

Plaintiff filed for SSI and DIB on December 15, 2008. In her application she alleged she became disabled on November 10, 2006, but later amended the onset date to be December 15, 2008. Her applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge (ALJ).

Plaintiff was 43 years old at the time of the hearing, which was conducted on May 11, 2010. (Tr. 388-412). The plaintiff and a vocational expert testified at the hearing. The plaintiff, who has the equivalent of a high school education, has past relevant work experience as a nurse's aide and an assembler.

At the administrative hearing, the plaintiff indicated that she was five feet tall and weighed 210 pounds. (Tr. 394). She stated that she obtained a GED, can read and write, make change, and do simple math. (Tr. 394). The plaintiff lives with her husband and their eight year old daughter. (Tr. 395). She testified that she had ankle surgery in November of 2006. (Tr. 396). According to the plaintiff, her last work was as an assembler, helping to assemble motors. She testified to performing that job for five years, to working at another plant as an assembler for seven years, and to working as a nurse's aide for seven years prior to her assembly work. (Tr. 398-399). She described her medical problems as swelling of her feet, lower back pain, insulin-dependent diabetes for fourteen years, high blood pressure, weight problems, a protruding disc in her lower back, depression, diabetic nerve pain, incontinence, thyroid problems, and residual effects from the November 2006 ankle surgery. (399-400). The plaintiff stated that her daily activities include getting her daughter off to school, slowly doing housework, and resting at least twice a day. (Tr. 401). The plaintiff drives a car, going to the grocery store about three times a month, and estimates that she can walk 45-50 yards. She testified that she could stand in line at the store for about 10

minutes. (Tr. 403). She stated that she no longer attends church due to her depression. (Tr. 403). On questioning by the her attorney, the plaintiff indicated she had lost 22 pounds in the previous six months. She also elaborated on her need to rest, stating that she would need to rest at least two to four hours during a workday to address her back pain and the swelling in her legs and feet. (Tr. 404-405). The plaintiff indicated she propped her ankle up to deal with the swelling, doing this for about 30 minutes three or four times a week. (Tr. 405). The plaintiff also stated that she has blurry vision and that her diabetes has affected her bladder control. (Tr. 406). She testified that her depression has "just made me just not want to do anything." (Tr. 406). She also stated that she occasionally has nausea from taking her insulin. (Tr. 407). The vocational expert testified that the plaintiff's past work as a nurse's aide was semi-skilled medium work, and that her past work as an assembler was unskilled, light work. (Tr. 408). The ALJ asked the vocational expert to assume an individual the plaintiff's age, with the same education and work background, who was limited to no more than light work with a sit/stand option. The vocational expert testified that such a person could not perform the job of assembler. (Tr. 408). The vocational expert further testified that there were other jobs that such a person could perform, including inspector and cashier. (Tr. 409). The ALJ then inquired if the person could do sedentary work and there was no sit/stand option, would there be jobs which such a person could perform. The vocational expert testified that such a person could perform two jobs: appointment clerk and a sedentary assembly job  Finally, the vocational expert indicated that an individual who missed up to four days a month due to illness would not be able to perform jobs in the competitive workforce. (Tr. 411).

On August 12, 2010, the ALJ found the plaintiff was not disabled as defined in the Social Security Act. (Tr. 10-21). The ALJ specifically found the plaintiff has the severe impairments of

hypertension, diabetes mellitus, obesity, and status post-surgery to left ankle.  The ALJ found, however, that she did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  The ALJ found the plaintiff has the residual functional capacity to  perform light work, with the additional limitation of a sit/stand option.  As part of his RFC evaluation, the ALJ examined the plaintiff's subjective statements and found them not fully credible.  The ALJ determined the plaintiff is unable to perform all of her past relevant work.  Relying upon the testimony of the vocational expert, the ALJ held the plaintiff could perform other jobs, such as inspector and cashier, that exist in significant numbers in the national economy.  As a result, the ALJ concluded that the plaintiff was not disabled.  The Appeals Council, on June 9, 2011, denied plaintiff's request for review (Tr. 3-5), and plaintiff subsequently filed suit with this Court.

 The ALJ considered her impairments by way of the familiar five-step sequential evaluation process.

The first step involves a determination of whether the claimant is involved in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If the claimant is, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether the claimant has a severe impairment or combination of impairments.  *Id.*, § 404.1520©); *see* 20 C.F.R. § 404.1526.  If not, benefits are denied; if so, the evaluation proceeds to the next step.

Step three involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling.  *Id.*, § 404.1520(d).  If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id.*, § 404.1520(e). If so, benefits are denied; if not, the evaluation continues.

Step five involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given claimant's age, education and work experience. *Id.*, § 404.1520(f). If so, benefits are denied; if not, benefits are awarded.

In support of her request for reversal, plaintiff contends: (1) the ALJ erred in failing to find the plaintiff met Listing 1.02B; (2) the ALJ overestimated her residual functional capacity (RFC) by failing to properly assess her obesity and nonexertional limitations; (3) the ALJ overestimated her RFC by failing to properly assess her chronic pain; and (4) the ALJ erred in discrediting the opinion of nurse practitioner Tamra Ward. *Pl.'s App. Br.* at 9-19. We find no merit in the arguments of the plaintiff, and find substantial evidence supports the ALJ's findings.

The plaintiff's first claim is that the ALJ should have found she met Listing 1.02B. To meet this Listing, the plaintiff must demonstrate (1) gross anatomical deformity of the joint; (2) chronic joint pain and stiffness; (3) signs of limitation of motion or other abnormal motion of the affected joints; and (4) findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints. The plaintiff must also show involvement of one major peripheral joint in each upper extremity resulting in inability to perform fine and gross movement. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02, § 1.02B. The plaintiff falls far short of demonstrating that she met the Listing, as she does not even allege involvement of a major peripheral joint in both upper extremities, nor does she allege an inability to perform fine and gross movement effectively. In the absence of such allegations or proof, the argument for relief is waived.

5

[W]e see no reason to abandon the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. As we recently said in a closely analogous context: "Judges are not expected to be mind[]readers. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace."

*United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990), *cert. denied*, 494 U.S. 1082 (1992)(citations omitted); *accord, Rotskoff v. Cooley*, 438 F.3d 852, 854-55 (8th Cir. 2006) (issue deemed abandoned when not developed in brief); *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting out of hand conclusory assertion that ALJ failed to consider whether claimant met Listings because claimant provided no analysis of relevant law or facts regarding Listings); *Perez v. Barnhart*, 415 F.3d 457, 462 n.4 (5th Cir. 2005) (argument waived by inadequate briefing); *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (perfunctory complaint fails to frame and develop issue sufficiently to invoke appellate review); *Hartmann v. Prudential Ins. Co. of America*, 9 F.3d 1207, 1212 (7th Cir. 1993) (failure to press a point, even if mentioned, and to support it with proper argument and authority forfeits it) (Posner, C.J.); *SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992) (it is obligatory that appellant claiming error as to factual determination provide court with essential references to record to carry burden of proving error); *Leer v. Murphy*, 844 F.2d 628, 635 (9th Cir. 1988) (issues raised in brief which are not supported by argument are deemed abandoned). As a result, there is no merit to the claim the ALJ erred by not finding the plaintiff met the Listing.

For her second and third claims for relief, the plaintiff contends the ALJ overestimated her RFC. Specifically, the plaintiff urges that the ALJ improperly evaluated her obesity, nonexertional impairments, and chronic pain. The ALJ addressed the plaintiff's subjection allegations in his opinion, citing and evaluating the factors set forth in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir.

1984).  He considered her allegations of back and leg pain, depression, obesity, vision problems, nausea, and diabetes.  (Tr. 16-19).  In addressing these allegations, the ALJ examined the plaintiff's daily activities, which included household chores, shopping, driving, and taking care of her daughter.  The ALJ also cited the objective medical evidence, which showed that the plaintiff was diagnosed with a small disc protrusion in her back but with no objective neurological abnormalities.  In addition, the plaintiff was noted to have had two ankle surgeries, the latest in November of 2006, but the surgeon had not indicated any permanent limitations from the surgeries, and the plaintiff had not required pain treatment following the surgeries.  The ALJ further examined the medical record and indicated that the plaintiff's diabetes appeared to be controlled with medication.  In addition, the ALJ noted that in the plaintiff's paperwork accompanying her application she indicated no side effects from her medications, but at the hearing she stated nausea stemmed from her diabetes medication.  The ALJ finally noted that no treating or examining physicians placed any permanent limitations on the plaintiff.  The thorough examination of the plaintiff's subjective allegations is supported by substantial evidence.  As a result, we find no error in the RFC determination of the ALJ.  There is no merit to claims two and three.

The final claim of the plaintiff is that the ALJ erred in discrediting the opinion of nurse practitioner Tamra Ward.  The plaintiff contends that the ALJ should have accorded "controlling weight" to the RFC of nurse practitioner Ward.  Docket entry no. 11, page 19.  The ALJ addressed the nurse practitioner's role as follows:

> A thorough examination of Dr. Arp's medical records shows that he never imposed any permanent restrictions on the claimant's physical activities.  The undersigned acknowledges that Ms. Ward completed a medical source statement that significantly limited that [sic] the claimant's ability to perform work activities; however, she is not an acceptable medical source and her opinion is not fully supported by the objective medical evidence.  As detailed above, an MRI of the lumbar spine failed to show any

7

spinal stenosis, foraminal narrowing, or severe degenerative disc disease. A 2008 x-ray of the claimant's left ankle showed no evidence of fracture, dislocation, or abnormal bone density. There is nothing in the medical records establishing that the claimant's diabetes [h]as failed to respond to insulin treatment. The undersigned finds that Ms. Ward's opinion is not persuasive because it is inconsistent with the objective medical evidence and the claimant's reported daily activities.

(Tr. 18-19).

The plaintiff argues that "discrediting a nurse practitioner in this day and time should be reversible error" and "for the ALJ to state this is not an acceptable medical source goes against common sense." Docket entry no. 11, p. 18. The flaw with this argument, however, is that the applicable regulations, not the ALJ, define a nurse practitioner to be not an acceptable medical source. The pertinent regulations define a medical opinion as coming from a physician or psychologist or other acceptable medical source and reflecting judgments about the nature and severity of the claimant's impairments. 20 C.F.R. §§ 404.1513(a), 404.1527(a)(2), 416.913(a), 416.927(a)(2). The statement of a nurse practitioner can be considered, as the ALJ did in this instance, but it does not rise to the level of a medical opinion. We find no error in the analysis performed by the ALJ of the nurse practitioner's notes.

In summary, the plaintiff's arguments are without merit for the reasons stated herein. Substantial evidence supports the Commissioner's decision.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED this   2   day of February, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

8